Good morning, everybody. We're here today for oral arguments. We're going to begin case number one, which is number 20-1747, Whitfield v. Cowan, and we're going to begin with oral argument first from Mr. Baldorf Barnes. Welcome back. Thank you. Good morning. Good morning. So, good morning, Your Honors, and may it please the Court. My name is Christopher Baddorf Barnes, and I represent Mr. BenYeHudah Whitfield, the plaintiff below in appellate. We're here today because Mr. Whitfield chose not to sign a form and because Defendant Spiller chose to punish him for that. And I'd like to clarify, this case is not about Defendant Spiller's refusal to release Mr. Whitfield from prison on January 7, 2010. This case is about her decision to punish Mr. Whitfield for his refusal to sign a form that he was not allowed to read. Now, when you indicate punish, you're talking about a statement by Ms. Spiller to Ms. Howe to issue a disciplinary ticket? That, among other things. What in addition to that? So, there are several deprivations and punishments that we believe Spiller is personally involved in in this case. That includes Mr. Whitfield being placed into disciplinary segregation on January 7, 2010, Mr. Whitfield being sentenced to three months of disciplinary segregation, Mr. Whitfield being declared an MSR violator, and Mr. Whitfield's release plan being intentionally delayed. Is it your position that Ms. Spiller was the decision maker for each of those steps? It is not our position that Defendant Spiller was the final decision maker, but it is our position that she was involved in those decisions sufficient to meet the personal involvement requirement under Section 1983. Why don't you expand on that? I'd be happy to. So, first with respect to Mr. Whitfield being placed into disciplinary segregation on January 7, Spiller testified that she told Mr. Whitfield he would get a ticket and be sent to segregation if he didn't sign the EDPA. When he didn't sign the EDPA, Spiller made the decision that a disciplinary ticket should be written against him, and she directed a subordinate to write that ticket. She knew that the result was that Mr. Whitfield would be taken immediately to disciplinary segregation. So, with respect to Mr. Whitfield being sentenced to three months of disciplinary segregation by the Adjustment Committee, the record demonstrates that Spiller wanted Mr. Whitfield to be punished by the Adjustment Committee and that she pulled the levers that were available to her to ensure that he would be punished. What's the evidence in the record that she wanted punishment? I think there's the context of all of her actions and what we see later on, specifically with respect to her delaying his release plan, you know, when taken together demonstrates a desire for him to be punished. Even the mere fact that she sent him to disciplinary or to segregation on January 7, she punished him for not signing a form rather than just sending him back to the general population, which is sort of the obvious thing to do in that case, demonstrates her desire to punish, I believe. Does the record say that she tells Ms. Howe that Whitfield should go to segregation or that he should be reincarcerated? Because there is a distinction between the two, correct? The record is not clear on exactly what she said, but I think that it's entirely reasonable for an inference to be made examining the fact— This is a summary judgment, right? So, making inferences favorable to Mr. Whitfield. That's exactly right, Judge Whitfield. Now, the record demonstrates, as I said, that Defendant Spiller wanted him to be punished by the Adjustment Committee and pulled the levers to make that happen. The involvement of the Adjustment Committee was triggered by the disciplinary report that was written against him being labeled as a major offense, and the infraction identified was disobeying a direct order, which implies insubordinate behavior. But what Mr. Whitfield did is he simply refused to sign a form that he wasn't allowed to read and that he didn't believe he was legally required to sign. Now, just to be clear, the record—and correct me if I'm wrong—but I thought the record showed that he was given only the final page of the form, not the whole form. That's correct, and so when I say that he was not allowed to read it, he requested that he read the form, but he was given only the signature page, and that was one of the reasons, among several, that he did not—that he refused to sign this form. So he was concerned perhaps about, you know, conceding something in the pages that he hadn't seen that he didn't want to concede or otherwise just whatever risk there was in signing a form that you don't know what it says. That's of this as a major offense, suggests an attempt by her to find a way to convert what was his good faith refusal to sign this form into a disciplinary matter. Mr. Badford-Barnes, can I ask you a question taking off on what you're saying right now, and it's more legal. Why is it that you're focused on her punitive intent, as you see that as a factual matter? Why are you focused on that as a legal matter? Why is that relevant? I think punitive intent is a type of retaliatory animus. Is it necessary for success on the claim here? That she have punitive intent? Yeah. Not specifically. Any form of animus—for instance, if she were generally angry with Mr. Whitfield for his refusal to sign the form and frustrated with that causing some sort of issue for her, and she took actions which are negative towards Mr. Whitfield, that would, I think, be sufficient as well. But I think there's certainly a question of fact in this case as to whether she acted with punitive intent, and punitive intent is retaliatory animus. Okay. And we are speaking about retaliation for exercising First Amendment rights. I'm just following up on what Judge Scudder said, just to pin down the legal theory that you're arguing right now. I'm sorry. It's a First Amendment—it's retaliation for an exercise of First Amendment rights. Is that so? That's correct. So it's undisputed that Mr. Whitfield's refusal to sign the form was speech, and it's undisputed that Mr. Whitfield was punished for refusing to sign the form. I.e., for his speech. I.e., for his speech. The district court determined at summary judgment that Defendant Spiller was not involved in this case. And I'd also like to point out that whether Mr. Whitfield's placement into disciplinary segregation initially on January 7th, whether Defendant Spiller was involved in that and whether that was retaliatory was not evaluated by the district court because the district court applied the wrong standard. The district court did a 14th Amendment analysis looking at whether Mr. Whitfield had a protected interest with respect to disciplinary segregation, determined that Mr. Whitfield didn't, and so never looked at that specific question. Okay. Are you arguing whether you want to say punitive intent, retaliatory animus? Are you arguing that because you feel you're compelled to because of our decision in Holman? Where does that requirement come from legally? What's the source of it, a showing of retaliatory animus? I'm sorry. I'm not sure I quite understand. Yeah. Let me give you a hypothetical. Yeah. Okay. So, suppose an inmate is in a prison for quite a long time and is upset with a whole access to the yard for exercise, et cetera, and has developed a pretty entrenched pattern and practice of filing grievances one after another. There's hundreds of them. And at some point, the warden says, look, this ain't working. I'm coming to work every morning and I'm finding a grievance from you. You're clearly not happy here and I can't deal with these grievances. I just can't. I got a whole facility to run. I'm going to transfer you over to Statesville or wherever. That way. And the transfer happens. Cause of action? No. So, there is a distinction there and it's a narrow distinction. If the transfer is being done for the benefit of the inmate and not in... Well, what if the inmate says, I don't think it's for my benefit at all. I have no interest in going to Statesville. I think this was retaliatory animus. The warden told me that the reason I'm being transferred is because he's had it with my grievances. So, we look to the retaliatory animus of the warden. And so, if it was the warden's intent to just benefit this prisoner, if the warden wasn't aware, if the warden was aware... What if the warden says he's doing it as part of his management of the prison, in a Turner sense almost, where the warden says, you have been imposing just too big a burden on my ability to run this prison. Off you go to a different institution. Wardens get to make those kinds of decisions, don't they? I'm not entirely sure on that question where if it's just purely for a management decision, that seems... It surprises me that you're not saying, and what I'm trying to get at is legally. My surprise doesn't make any difference. All right? What I'm trying to get at is why you're not saying it's a legal matter. Oh, there's absolutely a cause of action. Because from the plaintiff's perspective, it is retaliatory animus. He holds a First Amendment right. So, in that case... And he's going to say, let's go to trial and the jury can sort all this stuff out and make a decision about the true cause of this, et cetera. So, when you say if there's a cause of action, I think that survives summary judgment. I think that survives summary judgment on the question that if you have a situation where... So, we send it to trial. That case is going to trial. Well, in almost any case where you have facts that are similar to those, yes, I think it has to go to trial because the existence of retaliatory animus there, right? Retaliatory animus is an element of a First Amendment claim. And the existence of that is something that is going to be very difficult to suss out except through a trial. Well, at least on this record, there are disputed issues of fact. Certainly on this record, there are disputed issues of fact on the issue of retaliatory animus. And I don't think we really have those issues, for instance, of Turner analysis in this case with respect to the retaliatory animus issue. I don't think that's present here. The retaliatory animus is... There's a clear path to retaliatory animus on a disputed question. No, I hear you there. The broader... What's behind my question is, do we think Holman... Do you think Holman is consistent with US Supreme Court case law? No, I do not. I struggle with Holman. I think in a case where you have an action that is taken because of protected speech, and that results in an actually negative result for an inmate, there should be a cause of action there. I think Holman says the opposite of that, but I don't believe that's the opposite. You're doing what you have to do. I was just trying to figure out what the underpinnings are of the... What's legally driving the statements about punitive intent and retaliatory animus and all that. And that is this court's decision in Holman. Right. Thanks. Mr. Batroff-Barnes, getting to the issue of Mr. Whitfield's position on signing, would a position of his, his reasoning that the board couldn't impose electronic monitoring as a condition of MSR, would that negatively impact prison discipline? So I think that's... If Mr. Whitfield's position is that he can't be placed on... That's not the issue here in this case, I don't think. Mr. Whitfield was not claiming that he wouldn't abide by the conditions of electronic monitoring. And as I... But he never reached that point, right? We never reached that point. He just said, I want the form. There may be a disputed issue of fact here, though. Looking at the facts, one way, Mr. Whitfield's way, he's concerned that he hasn't read the form, and the form says it's for sex offenders, and he's not a sex offender. So he's worried that he's being asked to sign the wrong form. Maybe there's another way of looking at the facts where he's just being obstreperous and he doesn't want to sign a form. Of course, we all know from our perspective that sign or no sign, he's going to be subject to electronic monitoring. But the prison may have a policy of trying to get inmates to acknowledge that fact before they leave. But we don't really know which story is right at this moment, do we? We don't. So that would be an inappropriate basis because this is a summary judgment. And I think also, to the extent this case, as I said, is not about the decision not to release him. Those are the failure to release him on January 7th. It's about punishing him. And there is no legitimate penological objective that is furthered by punishing an inmate for their refusal to sign a form. First of all, and in particular, this form. This form, it deals with conditions after the inmate has been released from prison. The refusal to sign it only has to do with things after the inmate is released. And so- How important is it that he doesn't have the full form? If he had been given all 20 pages of it or whatever it might be, all three pages, and he read it and he just said, I don't feel like signing this. Would that be the same case as- In other words, how important is his reason for not signing it? I don't think his reasons are important at all. Mr. Whitfield, choosing not to sign a form does not warrant punitive actions. That's his claim in a nutshell. Okay. Your representation is that his reasoning is immaterial. His reasoning for why he decided not to sign the form is immaterial on the question of whether he can be punished for the remainder of his sentence. Thank you. That will be reserved and we'll go to Ms. Shrove. Good morning, and may it please the court. My name is Alexandrina Shrove, Assistant Attorney General on behalf of Betsy Spiller, Donald Gatz, and the other defendants appellees. As a condition of his release from custody, Whitfield's sentencing orders required that he serve a three-year term of mandatory supervised release, or MSR, subject to electronic monitoring. Defendant Spiller reasonably relied on these orders when she explained to Whitfield that he was required to be placed on electronic monitoring to sign the consent form and ordered a disciplinary ticket when he refused to comply with that order. But didn't he ask her- First of all, he's not really given the form. He's given a part of the form. What if one of the pages that he didn't get characterized him as a sex offender, for example, when that's amounted to a confession that he was a sex offender when he was not? Surely that would be adverse to him. That may be the case, Your Honor, but I think we have to look at his chief complaint at the time when he was speaking to Spiller. We can see this from not only her deposition testimony but the January 11th grievance that he filed after this conversation. And his chief and primary complaint at this time was that he did not think that he was supposed to be on electronic monitoring at all. But why does that matter at all? I am not familiar from the Supreme Court with any line of cases that says that First Amendment expression, the First Amendment protects expression only if it's accurate. Indeed, the Supreme Court has held the opposite, that even if you're lying about getting a distinguished service medal or even if you're lying about other things, you still have First Amendment protection. You can be defaming people. You can be hurting somebody at a funeral, and still the First Amendment is there. So part of my question is what does it matter if he was under a mistaken impression that he wasn't subject to electronic monitoring because he thought that this was a sex offender thing? Your Honor, it matters greatly that he was under a false impression, and I think it ties nicely with this court's perspective. Why? I mean, consistently with these Supreme Court cases? Well, if we look to this court's public employee false speech analysis, we can see that what matters in that context is what the listener believed that speech to be, whether the listener believed that that speech was true or false. But those cases are premised on an adequate investigation, and Spiller concedes that she didn't look at the law. She didn't give him the rest of the form. There's no investigation at all in her case. Well, I think that's a mischaracterization of the record, Your Honor. She says in her deposition testimony that she took the statute with her to talk with Whitfield. That is evidenced also in his description of the events in his January 11th grievance. But he also says in his deposition he refuses to sign the form because he's not given the whole thing, and he didn't want to sign it away, and it was a mistaken form since it said something about being a sex offender. Surely that would be troublesome to somebody who's not a sex offender. That may be the case, Your Honor, but I think if the portion of the form that related to sex offenders said anything from this point beyond only applies to sex offenders, and that's based on the plain language of the form. So we're asking Mr. Whitfield to have a JD? I mean, really? No, Your Honor, and I think what's important to look at is that he did not think, regardless of whether or not he, you know, thought that he didn't need to sign this form, he did not think that he was required to be on electronic monitoring at all. But that was immaterial. He was going to be on electronic monitoring. He can have all the viewpoints he wants about that. That's not what this case is about. This case is about can you affix his signature to an incomplete form? When we look to what she knew at the time, this was within not only her interpretation of the statute, but also departmental policy as well. Is this what the department always does? Give people just the last page of a five-page form? That's pretty shocking. I don't know if it's within their policy to only give them a signatory page. As you had mentioned, we have to take the facts based on Whitfield's statements, so we don't know necessarily whether or not he was given the entire form. But I think, you know, we can't forget the fact that this is within the department's policy. Spiller testified to that in her deposition multiple times that this was within the department's policy to require inmates to sign this form regardless of whether or not they are required to sign this under the Illinois statute. That issue here requires the department to obtain the consent of individuals who are being placed on electronic monitoring, but that statute doesn't preclude them from requiring all other individuals who are going to be on electronic monitoring from signing this form as well. Spiller and Whitfield have very few interactions, correct? Correct, Your Honor, and I think that that demonstrates her lack of personal involvement in this case. And Spiller then indicates he's not signing, tells how he's got to be issued a ticket, is that correct? That's correct, Your Honor, and I think that that speaks to the fact that she doesn't have a retaliatory animus here. There wasn't an improper motive in her mind at the time when she had ordered this disciplinary ticket to be issued, and that's evidence from the facts. Isn't that a disputed issue of fact? I mean, I can imagine a scenario where she doesn't have retaliatory animus, and I can also imagine a scenario taking Whitfield's facts that she does. You know, she's angry with him for not signing the form. She won't even go to the point of giving him the full form and explaining what the sex offender language is, and he's being asked to sign something that he truly doesn't believe is pertinent to him, and the state has already that this was expression. Your Honor, I want to address that last point really briefly. The parties did not argue below whether or not this was protected speech. The district court assumed that this was protected speech, so at most this argument is potentially forfeited, but it certainly was not affirmatively waived that this was not protected speech, and I think that this court on de novo review can reach that legal question as to whether or not his refusal to sign was in fact protected speech here. What's your view on it? My position on whether or not this argument is forfeited? I mean, you can say, you know, it's been assumed and all that kind of, but I mean, what is the argument it's not? Your Honor, under either this court's public employee false speech jurisprudence or under the Turner factors, this was not protected speech. If we look to the public employee false speech, it requires a balancing of the employee's First Amendment rights with also the employer's need to have an effective workplace, and we have that same situation here when we apply that to the prison context. Both public employees and prisoners have circumscribed First Amendment rights because you have to balance those particular interests. But if you're going to rely on that line of cases, then let's rely on it, and what we've said is if an employer takes an action against an employee for speech that the employer, based on an adequate investigation, reasonably believes to be false, then the employer's interests prevail. But there is no investigation here on the facts as Mr. Whitfield presents them. He's given the wrong form. Nobody looks into anything. Spiller does back, as counsel said, to the general population, saying obviously things aren't ready today, so off you go. That's different from disciplining a person. No, Your Honor, and I think she does provide an adequate investigation here. What does she investigate? What on earth did she do? She has both of his sentencing orders at the time when they have this conversation, and I think that's why it's important to not forget that his chief and primary complaint during this conversation was that he was not required to be on electronic monitoring at all. That's what he says in his grievance, correct? Correct. He doesn't mention the signature page in the grievance. He mentions both of them, Your Honor, but the chief and primary complaint and the reason why he didn't think that he needed to sign was because he thought that that was consenting to being on electronic monitoring. I still don't understand why the First Amendment, if that's what the First Amendment covers, we're going to have a much more narrow set of First Amendment jurisprudence in this country. Every time a newspaper repeats a comment that somebody makes that's a mistake of fact, that's not protected by the First Amendment? No, and that's not what's happened here, Your Honor, and I think we have to look at the fact that both public employees and prisoners have circumscribed First Amendment rights. They are not the same. Let me ask you the same question legally. Forget the facts. It doesn't matter what happened here. Does a mistake of fact or a mistake of law negate the third element of a retaliation claim? And if so, what's the legal basis for that? Where do you get that conclusion from? It does negate the third element of a retaliation claim because to understand whether or not an individual has that retaliatory animus, you don't have to necessarily... Let me give you a hypothetical, purposely not talking about this case. A prisoner complains over and over again about medical care and concerns that he's not getting adequate care. And he's told, we're sick and tired of the complaints. We're transferring you or something, something that is a deprivation. And it turns out that at the core of the 50 complaints he filed, he's just flat wrong about something. It's not just mistaken. He's just dead wrong about it. But he nonetheless suffers the deprivation. First Amendment, does that have a claim? He says, I've had it. I need treatment for whatever. And he's been diagnosed time and time again as not having the whatever. So the doctor is not going to treat him for X when he doesn't have X. He's persuaded himself he has X. He's not right. And they say 180 days, segregated confinement, we're shipping you over to Statesville. So he's mistaken. There's no question about it. So the legal issue is, does that mistake negate the causation element of the retaliation claim? I think that it does, Your Honor, because we have to specifically look at whether or not there was retaliatory animus in the mind of the defendant. Okay, what's the legal content of retaliatory animus? What does that mean? It means some ill will in the mind of the individual at the time when that action is taken. As measured by what? Ill will vis-a-vis what? A pure motive? I don't think that this court's case law specifically speaks to that. There was, you know, I struggled to find a specific definitive answer to what does retaliatory animus and what does retaliatory motive specifically mean. But I think it has to be measured against what the individual thought, what was in their mind at the time when they took these actions. So which individual are we talking about? Because in Judge Scudder's hypothetical, the prisoner sent off to disciplinary segregation believes that this was retaliation for his urging the medical treatment for condition X. The individual in the prison, the warden or whoever the warden has delegated this authority to, has sent the person off to segregation. And their frame of mind is, you are, whatever they're saying, you're abusing the grievance process or they're saying something. But let's be precise about who has to harbor that retaliatory animus. And is it the prisoner's belief that that's being, that that's driving the situation? Or is it the state of mind of the actor, the state actor? It's the state of mind of the state actor. It, because you have to, there has to be a causal connection between the alleged purported protected speech and the deprivation that had taken place. There has to be that. Okay. So in that hypothetical is Judge, Judge Wood has articulated it too. Why can't that claim go to trial? Because the, the, the say it's the warden that made the decision. Just make it easy. The warden is saying, one, you're wrong about your belief is wrong about your medical condition. And two, I am sick and tired of the grievances every day about this. I've told you, cut it out on the grievances. You've not cut it out. I get them every single day. We're transferring you. We've had it. We're putting in segregated confinement. Whether or not this goes to trial is, it depends on whether or not there's a genuine issue of material fact. And in that particular case, I think that there very well could be a genuine issue of material fact. But when we look at the Spiller has that retaliatory animus in her mind at the time when she ordered this disciplinary ticket to be issued. And that's further evidenced by the fact that not only does she repeatedly say that this was part of the policy. And you say that, you say that because it's a factual matter. The way you read the record is you're saying, because she really truly did believe in good faith, honest motives, et cetera, that he had to sign the form. True. And there's nothing else in the record to dispute that fact. Where does a good faith overlay come into First Amendment law? If a government official decides to censor certain speech and they believe that that speech is harmful or inflammatory, they believe that in good faith, does that mean the censorship is okay? Not necessarily, Your Honor. Because good faith has nothing to do with it. There is no good faith exception to First Amendment protection. No. But when we look to the actual factors of a First Amendment retaliation claim, the good faith factors into whether or not the state actor had the requisite culpable state of mind at the time that they issued that deprivation or caused that deprivation. And then that's separate and aside from the first analysis as to whether or not this was protected speech. But what if the person thinks in good faith that it's okay to punish somebody for... Let's change the facts a little. It's okay to punish somebody for insisting on his right to halal meals. And it's a nuisance for the prison to prepare halal meals, and so they don't want to do that. So they say, we're just going to punish you for this insistence. But there's a First Amendment religious protection for saying, I want halal meals. Well, in your hypothetical, Your Honor, there is that causal connection between the protected speech and the deprivation. But the good faith has nothing to do with it. There is a causal connection for sure. But you can believe in all the good faith you want that you don't have to give a person a halal meal. But if you do, under the First Amendment religion clauses, then your good faith is beside the point. I think the distinction, Your Honor, is if the state actor at that time didn't have the ability to provide that halal meal, they genuinely believed that the state prison could not provide that meal, then that doesn't create that causal connection. And so ultimately then, what we have to look to is the state of mind of the state actor at the time when their actions are taken. And when we look at that here, there's no question in the record that there's no retaliatory animus in Spiller's state of mind when she is ordering this ticket to be issued. Every single person who had come in to talk to Whitfield before Spiller entered the room had told him the same thing, that this was part of the department's policy, that everybody who was entering electronic monitoring needs to sign this form. And she simply said the same thing when she came in to speak with him as well. That demonstrates that there's no retaliatory animus. There's no ill will in her mind at the time when she is ordering this issue be taken. So you can take somebody's First Amendment freedoms away from them as long as you have a clean heart. It's merely one factor, Your Honor, in determining whether or not this is retaliation. It's the third factor in a retaliation claim. It doesn't negate the fact that the court still needs to do analysis as to whether or not this is protected speech to begin with. And here, when we apply either the public employee false speech jurisprudence or the Turner factors, we can see that as an initial matter, his refusal to sign was not protected speech here. Your Honors, if there are no further questions. Give us one minute. Can I ask just one question? Did your clients here, did they, I know this hasn't been litigated. I'm just trying to understand some of the procedural backdrop of it and where we're at here. Was qualified immunity raised as an affirmative defense in response of pleadings here? And where are we at on qualified immunity, if anywhere? Your Honor, the qualified immunity was raised as an affirmative defense. Defendants have specifically argued on appeal that Spiller is entitled to qualified immunity specific to the Eighth Amendment claim. We disagree that there were any deprivations that she was personally responsible for. But if the court reaches that issue, I think that the clear distinction is that the only case that Whitfield has provided as an example that would have put her on notice is Figs, but that case was decided six years after the events at issue here. Did she raise it as to both claims? Raised the defense, in other words, as to Eighth Amendment liability and First Amendment liability? It was not raised below as to First Amendment liability, Your Honor. But I think what's important and distinct about the cases that Figs relied on that would not have put her on specific notice is the fact that each one of those cases said that a records department individual who was responsible for calculating an individual's sentence needed to do more to determine whether or not that individual was unjustly incarcerated beyond that sentence calculation. There's no question in the record that she was not responsible for calculating sentences here, which makes it a clear distinction. Thank you very much, Ms. Shroff. Thank you. We'll go to rebuttal, Mr. Baddorf-Parnes. Your Honors, I have just a few points I'd like to make. For the defendants, the defendants argued that Mr. Whitfield's speech was not protected or Mr. Whitfield's refusal to sign was not protected because prisoners have reduced rights under Turner. So I'd just like to talk briefly about the Turner factors and how they apply in this case. So as I've said, this is not about him being released from prison on January 7th. It's about the punishment. So the question is whether the punishment of Mr. Whitfield, if there's under Turner, whether there's a penological justification for that punishment. Can I just interrupt just to absolutely nail down this point? So you concede that if Spiller had just said, back you go to general population because you haven't signed this, we wouldn't be here. With respect to Mr. Whitfield's First Amendment claims, we're not claiming that the failure to release on January 7th. So she could have sent him back to general population in a non-punitive, back to your cell you go. She could have. With respect to the failure to investigate claim, obviously there's a next step there and it's continued incarceration. That's correct. But on the Turner points, first, as I said before, the release paperwork only has to do with what happens after. It doesn't have to do with a prison disciplinary issue. So there's no penological justification for punishing someone for refusing to sign a form that has to do with something happening outside of prison. Second. Let me just pause on that. So you're indicating that if, say Mr. Whitfield talks to other prisoners and says, don't sign the form for ES because it's only for sex offenders. And then a series of offenders come through as they're going to be released to ES and they all say, oh no, I've been told not to sign that. That there would be no penological interest in having that kind of a rebellion? I think all we're talking about here is Mr. Whitfield's refusal to sign. And with respect to Mr. Whitfield's refusal to sign and punishing him for refusing to sign, there is no penological justification there. So you're making a distinction between the signature and the reasoning for the signature. I'm not making a distinction. I'm making a distinction between what happened here in terms of his refusal to sign and a situation in which he's telling other prisoners not to sign. The analysis of the penological justification, I think, is very different in those circumstances. I don't make any representation as to what the correct outcome is. Can you go back to the first sentence you made? You said, I want to make very clear what we're arguing. Say that again. What we're arguing is that Defendant Spiller's decision to punish Mr. Whitfield for refusing to sign a form was a retaliatory action actionable under the First Amendment. Okay. I got it. Your Honor, I'd also just like to point out that with respect to a policy, the defendants stated several times that Defendant Spiller was acting in connection with a policy. There's a disputed question of fact here as to whether there is any policy that Spiller was acting under in terms of punishing him and also in terms of requiring his signature. No policy has been produced, for instance, and we've not been able to find any. There is no evidence in this case that Defendant Spiller punished Mr. Whitfield because of her belief that Mr. Whitfield was lying about anything or being untruthful about anything. I'm just unclear then. So you're indicating that it was not, you see no evidence of a policy by the prison to have the offender being released sign off on ES? A specific written policy saying that would apply to Mr. Whitfield, requiring him to sign that electronic detention program agreement? No. You're not indicating Mr. Whitfield's sui generis in having to sign the form, are you? No, I'm not. But Mr. Whitfield was placed, the relevant orders placed Mr. Whitfield on electronic monitoring. This form was a form for electronic detention and there's no, as far as I'm, I believe I'm out of time. You can finish. There's no requirement that people who are placed on electronic monitoring sign this electronic detention form. Thank you, Mr. Batdorf-Barnes. Thank you, Ms. Shrove. The case will be taken under advisement.